FILED
CLERK, U.S. DISTRICT COURT
2/9/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2020 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>FRANK HAROLD ROSENTHAL,<br>　aka "Frankie Rosenthal,"<br><br>　　　　Defendant. | CR　　2:21-cr-00031-FLA<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud] |

The Grand Jury charges:

## COUNTS ONE THROUGH FOUR

[18 U.S.C. § 1343]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

Defendant ROSENTHAL

1.　Defendant FRANK HAROLD ROSENTHAL, also known as "Frankie Rosenthal," resided in Los Angeles County, California.

2.　Defendant ROSENTHAL maintained and had signatory authority over a checking account held at Wells Fargo Bank, N.A. ("Wells Fargo"), which was opened in Encino, California (the "Wells Fargo Checking Account").

3. Defendant ROSENTHAL was the sole owner of a TD Ameritrade brokerage account ("TD Ameritrade Brokerage Account").

4. Defendant ROSENTHAL was the account holder and user of the email account frankierosenthal@yahoo.com.

5. Defendant ROSENTHAL was the Owner and Chief Executive Officer of Company 1, a corporation registered with the Nevada Secretary of State.

6. Defendant ROSENTHAL was the sole owner of and had signatory authority over a Wells Fargo bank account in the name of Company 1, which was opened in Malibu, California (the "Company 1 Bank Account").

Defendant ROSENTHAL's Associate

7. Individual No. 1, who resided in King County, Washington, was an associate of defendant ROSENTHAL.

The Alibaba IPO

8. Alibaba Group Holding Limited ("Alibaba") was a Chinese e-commerce company. As early as September 2013, it was publicly anticipated that Alibaba would issue shares to the public in the United States through an Initial Public Offering ("IPO"). Alibaba issued shares through an IPO on the New York Stock Exchange on September 19, 2014.

9. Twitter, Inc. ("Twitter"), and Facebook, Inc. ("Facebook"), were well-known U.S. social media companies that issued shares through well-publicized IPOs prior to September 2014.

10. Goldman Sachs Group Inc. ("Goldman Sachs") was a leading global investment banking, securities, and investment management firm based in New York. Goldman Sachs was one of the underwriters for the

IPOs of stock for well-known companies, including Alibaba, Twitter and Facebook.

B.  THE SCHEME TO DEFRAUD

11.  Beginning as early as in or about November 2013, and continuing until at least in or about April 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant ROSENTHAL, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations and promises, and the concealment of material facts.

12.  The scheme to defraud operated, in substance, as follows:

   a.  Defendant ROSENTHAL made false and misleading representations to Individual No. 1 and pressured Individual No. 1 to solicit funds from Individual No. 1's relatives and acquaintances for a purportedly lucrative opportunity, namely, the opportunity to profit from defendant ROSENTHAL's claimed ability to buy Alibaba shares before Alibaba's IPO ("pre-IPO Alibaba shares") and at discounted pre-IPO prices.

   b.  As defendant ROSENTHAL then intended and knew, Individual No. 1 offered victims the opportunity to profit from defendant ROSENTHAL's purchase of pre-IPO Alibaba shares through Goldman Sachs at discounted prices and defendant ROSENTHAL's purchase of shares of Alibaba after the Alibaba IPO.

   c.  As defendant ROSENTHAL then knew, Individual No. 1 represented to victims that defendant ROSENTHAL, and Individual No. 1 through defendant ROSENTHAL, had previously invested in similar pre-IPO investment opportunities involving Twitter and Facebook.

      d.    As defendant ROSENTHAL then intended and knew, Individual No. 1 solicited victims to lend money to, and invest money with, defendant ROSENTHAL, which money defendant ROSENTHAL would use to buy the pre-IPO Alibaba shares.

      e.    In furtherance of these solicitations for funds, defendant ROSENTHAL and Individual No. 1 negotiated and drafted loan agreements and promissory notes, some of which were secured by assets owned by Individual No. 1.

      f.    Defendant ROSENTHAL signed the loan agreements and promissory notes, by which he promised and agreed to pay the victims a significant return on their loans and investments by dates certain that were specified.

      g.    To obtain an extended time period for paying the victims the promised returns on their loans and investments, Individual No. 1, as defendant ROSENTHAL then intended and knew, represented that pre-IPO Alibaba shares that defendant ROSENTHAL would buy would be subject to a lock-up period, following the Alibaba IPO, during which the shares could not be sold.

      h.    Defendant ROSENTHAL and Individual No. 1 provided victims with wiring instructions for the Wells Fargo Checking Account, the TD Ameritrade Brokerage Account, and the Company 1 Bank Account, and the victims wired their funds to these accounts as instructed.

      i.    Defendant ROSENTHAL induced victims to transfer money to him by making the following false and fraudulent representations and promises, directly and through Individual No. 1, which defendant ROSENTHAL knew were false:

          i.    Funds provided by victims would be used by

defendant ROSENTHAL to buy shares of Alibaba at a price lower than the anticipated IPO price and those shares would then be sold at a profit after the lock-up period expired;

    ii. Defendant ROSENTHAL had connections at Goldman Sachs that enabled him to buy pre-IPO Alibaba shares at a price lower than the anticipated IPO price;

    iii. Funds previously provided by the victims had been used to buy a large amount of pre-IPO Alibaba shares; and

    iv. Funds provided by victims would be repaid by a specific date, along with a profit calculated at a significant rate of return.

  j. In fact, as defendant ROSENTHAL then knew:

    i. the funds provided by victims would not be used to buy shares of Alibaba, but would instead be used by defendant ROSENTHAL to buy securities, stocks, and options for defendant ROSENTHAL's personal use and enjoyment through his TD Ameritrade Brokerage Account; to pay for his personal living expenses such as the $16,000 monthly rent payment for his Malibu residence; and to pay defendant ROSENTHAL's personal creditors;

    ii. defendant ROSENTHAL did not have connections at Goldman Sachs that would enable him to buy pre-IPO Alibaba shares;

    iii. defendant ROSENTHAL did not buy any Alibaba shares with victims' funds; and

    iv. defendant ROSENTHAL would not repay the funds provided by victims by the dates by which defendant ROSENTHAL had promised and with the profits from his sale of Alibaba shares.

  k. As a further part of his fraudulent scheme, in order to lull the victims into believing that their funds were being used

as he had represented and promised, defendant ROSENTHAL made false statements and representations to Individual No. 1 and the victims about: (i) the status of repayments on the loan agreements and promissory notes; (ii) the purchase of Alibaba shares with victim funds; and (iii) the sale of Alibaba shares.

l. As a further part of the fraudulent scheme, defendant ROSENTHAL used victim funds to partially repay an earlier victim in order to lull the earlier victim into a false sense of security and postpone inquiries or complaints.

m. As a result of the scheme to defraud, victims paid more than $3,000,000 to defendant ROSENTHAL.

C. USE OF THE WIRES

13. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant ROSENTHAL, for the purpose of executing the above-described scheme to defraud, transmitted and caused others to transmit the following items by means of wire communications in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| ONE | 1/12/2015 | Telephone call between defendant ROSENTHAL in Los Angeles County and a Wells Fargo representative located in North Carolina to obtain wire routing information |
| TWO | 1/13/2015 | An email sent from defendant ROSENTHAL in Los Angeles County, using frankierosenthal@yahoo.com, to the email address of Individual No. 1, located in Washington, containing the signed and notarized signature pages of a "Promissory Note" for $78,000 and dated January 13, 2015 |

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| THREE | 1/28/2015 | An email from defendant ROSENTHAL in Los Angeles County, using frankierosenthal@yahoo.com, to the email address of Individual No. 1, located in Washington, stating, in relevant part, "I have exact dates. All the rest by next week. Friday [R.M.] will be paid. [C]all you shortly." |
| FOUR | 2/18/2015 | An email from defendant ROSENTHAL in Los Angeles County, using frankierosenthal@yahoo.com, to the email address of Individual No. 1, located in Washington, containing the second page of a signed letter intended for R.M. |

A TRUE BILL

/S/
Foreperson

TRACY L. WILKISON
Acting United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

MONICA E. TAIT
Assistant United States Attorney
Deputy Chief, Major Frauds Section

KAREN E. ESCALANTE
Assistant United States Attorney
Major Frauds Section

ELLEN M. QUATTRUCCI
MICHAEL C. LANDMAN
Trial Attorneys, Tax Division
United States Department of Justice