E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
STEVEN M. ARKOW (Cal. Bar No. 143755)
MARK AVEIS (Cal. Bar No. 107881)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6975
     Facsimile: (213) 894-6269
     E-mail:    steven.arkow@usdoj.gov

SARA E. HENDERSON (Cal. Bar No. 329977)
Trial Attorney
Tax Division, Western Criminal Enforcement Section
United States Department of Justice
     150 M Street NE
     Washington, DC 20002
     Telephone: (202) 598-5963
     Facsimile: (202) 514-9623
     E-mail:   sara.e.henderson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:21-31(A)-FLA |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT FRANK HAROLD ROSENTHAL; AMENDED DECLARATION OF DANNY SHUSHELOVSKY |
| v. | |
| FRANK HAROLD ROSENTHAL, aka "Frankie Rosenthal," | Hearing Date: November 9, 2023
Hearing Time: 11:00 AM
Location:   Courtroom of the
            Hon. Fernando L.
            Aenlle-Rocha |
| Defendant. | |

1

1  Plaintiff United States of America, by and through its counsel
2  of record, the United States Attorney for the Central District of
3  California, Trial Attorney Sara E. Henderson, and Assistant United
4  States Attorneys Steven M. Arkow and Mark Aveis, hereby files its
5  Sentencing Position for defendant Frank Harold Rosenthal.

6  This Sentencing Position is based upon the attached memorandum
7  of points and authorities, the attached Amended Declaration of Danny
8  Shushelovsky, concurrently filed exhibits, and the files and records
9  in this case, including the presentence report ("PSR") and victim
10 impact statements and interview reports, and such further evidence
11 and argument as the Court may permit.

12 Dated: October 26, 2023          Respectfully submitted,

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    MACK E. JENKINS
                                    Assistant United States Attorney
                                    Chief, Criminal Division

                                      /s/
                                    _____
                                    STEVEN M. ARKOW
                                    MARK AVEIS
                                    Assistant United States Attorneys

                                      /s/
                                    _____
                                    SARA E. HENDERSON
                                    Trial Attorney
                                    U.S. Department of Justice
                                    Tax Division

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

TABLE OF CONTENTS

DESCRIPTION                                                                PAGE

TABLE OF AUTHORITIES...................................................2

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.    SUMMARY AND SENTENCING RECOMMENDATION............................1

II.   FACTS............................................................2

      A.    Facts Admitted at Change of Plea Hearing...................2

      B.    Relevant Conduct...........................................2

III.  PRESENTENCE REPORT...............................................3

      A.    Factual Findings...........................................3

      B.    Summary of Guidelines Calculation, Total Offense
            Level, and Sentencing Recommendation.......................3

      C.    Omission of Restitution to Victim S.W......................4

      D.    An 18-Level Enhancement Applies Because the Total
            Intended Loss is Between $3.5 Million and $9.5 Million.....5

      E.    A Two-Level Enhancement Applies for Substantial
            Financial Hardship to One or More Victims..................6

      F.    A Two-Level Enhancement Applies for Sophisticated
            Means......................................................7

      G.    A Two-Level Adjustment Applies for Vulnerable Victim.......8

      H.    A Two-Level Adjustment Applies for Obstruction of
            Justice....................................................9

IV.   SECTION 3553(a) FACTORS.........................................10

      A.    The Nature and Seriousness of the Offense (§
            3553(a)(1))...............................................10

      B.    History and Characteristics of Defendant (§
            3553(a)(1))...............................................10

      C.    The Need for the Sentence to Reflect the Seriousness
            of the Offense, Deterrence, Promote Respect of the
            Law, and Just Punishment (§ 3553(a)(2))...................12

V.    FINE ...........................................................13

VI.   CONCLUSION......................................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**CASES**

United States v. Aguare,
  800 F.3d 1173 (9th Cir. 2015) ..................................... 8

United States v. Arambula,
  238 F.3d 865 (7th Cir. 2001) ...................................... 9

United States v. Blitz,
  151 F.3d 1002 (9th Cir. 1998) ..................................... 6

United States v. Cancellare,
  246 F. App'x 406 .................................................. 8

United States v. DeLeon,
  603 F.3d 397 (7th Cir. 2010) ...................................... 9

United States v. Komar,
  529 F. App'x. 28 (2d Cir. July 8, 2013) ........................... 6

United States v. Lloyd,
  807 F.3d 1128 (9th Cir. 2015) .................................. 8, 9

United States v. Martin,
  455 F.3d 1227 (11th Cir. 2006) ................................... 13

United States v. McCormac,
  309 F.3d 623 (9th Cir. 2002) ...................................... 6

United States v. Milligan,
  No. 21-3075, 2023 WL 4874389 (D.C. Cir. Aug. 1, 2023) ............. 7

United States v. Stoddard,
  150 F.3d 1140 (9th Cir. 1998) ..................................... 6

United States v. Stratos,
  775 F. Appx. 352 (9th Cir. 2019) .................................. 7

**STATUES**

18 U.S.C. § 1343................................................... 1

18 U.S.C. § 3553(a)................................................ 3

18 U.S.C. § 3663A(a)(2)............................................ 5

**RULES**

Fed. R. Crim. P. 32(f)............................................................. 3

U.S.S.G. Section 2B1.1(b)(2)(A).................................................... 4

U.S.S.G. § 1B1.3................................................................... 2

U.S.S.G. § 2B1.1................................................................ 5, 6

U.S.S.G. § 2B1.1(a)(1)............................................................. 4

U.S.S.G. § 2B1.1(b)................................................................ 7

U.S.S.G. § 2B1.1(b)(1)(J).......................................................... 4

U.S.S.G. § 2B1.1(b)(2)(A)(i)....................................................... 4

U.S.S.G. § 3A1.1(b)(1).......................................................... 4, 8

U.S.S.G. § 3C1.1................................................................... 4

**Other Authorities**

1984 U.S.C.C.A.N. 3182............................................................ 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY AND SENTENCING RECOMMENDATION**

Defendant FRANK ROSENTHAL ("defendant") defrauded multiple investors by falsely representing that he would invest their money in pre-IPO shares of Alibaba. Defendant exploited and abused the victims' trusted intermediary and created a fictitious investment insider, burnished with a phony email account, to induce his victims to part with nearly $4 million that defendant quickly misused to day-trade for his personal benefit, pay his personal expenses, and, in the manner of a Ponzi-scheme, to repay other individuals who had previously invested with or loaned money to defendant.

Defendant pleaded guilty to Counts One and Two of the First Superseding Indictment ("FSI") charging defendant with wire fraud, in violation of 18 U.S.C. § 1343. The Presentence Report ("PSR") calculated a total offense level of 30 and a Criminal History Category of I, resulting in a guidelines range of 97 to 121 months term of imprisonment. The Probation Officer found no factors that would warrant a departure or variance.

The government agrees with the offense level calculation set forward in the PSR. Taking into account the recommendation of the Probation office, the guidelines computation, the Section 3553(a) factors discussed herein, and victim impact statements, the government recommends that the Court impose a guidelines sentence of 121 months' imprisonment, three years of supervised release, a $200 mandatory special assessment, and that defendant be ordered to pay $1,182,500 in restitution.

**II. FACTS**

    **A.  Facts Admitted at Change of Plea Hearing**

Defendant admitted to facts regarding his fraudulent scheme and facts relating to Counts One and Two of the FSI. (Dkts. 124; 129).

    **B.  Relevant Conduct[1]**

In addition to R.M., (the victim of the offenses of conviction), defendant similarly defrauded several other victims as part of his scheme during the same period as the charged conduct.[2] These additional victims include: 1) T.C.; 2) J.B.; 3) P.O.; 4) R.Mc.; 5) K.Mc. 6) L.M.; 7) J.K.; 8) P.K.; 9) L.K., and 10) S.W.[3] Counts Six and Nine relate to victims T.C. and J.B., Count Seven relates to victim S.W., and the government previously identified L.M. and P.O. as victims of the Alibaba scheme in its Motion *in Limine* ("MIL") No. 1 to admit their testimony at trial. (Dkt. 70).

Each additional victim loaned money to defendant for the purchase of pre-IPO Alibaba shares during the same time period as the charged scheme and the agreed-upon factual basis of defendant's guilty plea. (Dkts. 15, 124; Exs. 1, 2). The victims' experiences were quite similar to each other and the victims who are specifically identified in the charged counts. They were approached by Individual 1 ("David Kunkle" or "Kunkle") who explained that he and defendant

---

[1] The conduct in this section constitutes relevant conduct pursuant to U.S.S.G. § 1B1.3. The defendant defrauded the additional victims based on the same fraudulent scheme related to the purchase of pre-IPO Alibaba shares and during the same time period as the charged conduct and counts of conviction. The defendant also continued to defraud P.O., a victim of the Alibaba scheme, to keep P.O. from taking action against defendant for the Alibaba scheme.

[2] R.M. owns C.L. (hereinafter "Victim Business 1") that loaned funds to defendant for the purported Alibaba investment.

[3] T.C. and J.B. are owners and/or executives of an LLC that loaned money to defendant.

2

needed funds to purchase the pre-IPO Alibaba shares. Kunkle informed them, based on information provided by defendant, that he and defendant had an opportunity to buy pre-IPO shares through defendant's inside connections at Goldman Sachs, and that they expected monumental returns. Like R.M., T.C. and J.B. transferred their money to defendant pursuant to loan agreements with Kunkle and defendant. (Exs. 3, 4, 5). Defendant, however, did not use the victims' funds to purchase pre-IPO shares of Alibaba but misappropriated them as stated above.

Additionally, defendant deceived one of his Alibaba victims, P.O., into investing in another purported venture that was closely linked to the Alibaba fraud because defendant promised that the yield from the new venture would also cover funds due P.O. from the Alibaba venture. (*See* Government's MIL No. 2 (Dkt. 71); *see also* Ex. 6, at 2). Instead, defendant used P.O.'s new funds to support defendant's lifestyle and engage in personal day trading like he did with the Alibaba fraud proceeds.

## III. PRESENTENCE REPORT

### A. Factual Findings

The government concurs with the PSR's factual findings regarding the guidelines calculation and applicable sentencing factors under 18 U.S.C. § 3553(a). (Dkt. 142 at 3). Defendant did not file any objections to the PSR. *See* Fed. R. Crim. P. 32(f).

### B. Summary of Guidelines Calculation, Total Offense Level, and Sentencing Recommendation

The government concurs with the Probation Office's guidelines calculation and the resulting total offense level of 30 as follows:

| | | | |
|---|---|---|---|
| Base Offense Level: | 7 | | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics: | | | |
| Loss of more than $3.5 million but not more than $9.5 million | +18 | | U.S.S.G. § 2B1.1(b)(1)(J) |
| Substantial Financial Hardship to One or More Victims | +2 | | U.S.S.G. § 2B1.1(b)(2)(A)(i) & (iii)[4] |
| Sophisticated Means | +2 | | U.S.S.G. § 2B1.1(b)(2)(10)(C) |
| Vulnerable Victim | +2 | | U.S.S.G. § 3A1.1(b)(1) |
| Obstruction of Justice | +2 | | U.S.S.G. § 3C1.1 |
| Acceptance of Responsibility | -3 | | U.S.S.G. § 3E1.1 |
| **Total Offense Level:** | **30** | | |

(PSR ¶¶ 45-59, at 10-11).[5]

Based upon a total offense level of 30 and a criminal history category I, the Probation Office calculated a guideline range of 97 to 121 months imprisonment. (PSR ¶ 97, at 20).

**C.   Omission of Restitution to Victim S.W.**

The government objected to the restitution calculation in the PSR solely because the PSR omitted restitution owed to S.W. (the

---

[4] As to the two-level enhancement under U.S.S.G. Section 2B1.1(b)(2)(A), the PSR found that the enhancement applied because of two equally viable alternatives, that is, the offense: (i) involved 10 or more victims; and (iii) involved a substantial financial hardship to one or more victims. PSR ¶49.

[5] While not in effect yet, by the date of this sentencing hearing, the U.S. Sentencing Guidelines will have a new provision providing for a two-level reduction from the offense level which defendant may qualify for.

4

victim of Count Seven). (*See* Dkts. 15, 142). Like so many others, S.W. loaned defendant $12,000 for the purchase of pre-IPO Alibaba shares. (*See* Dkt. 76; Ex. 7). Defendant did not use S.W.'s funds to purchase said shares and did not repay S.W. the $12,000. Although S.W. is now deceased, his designated representative is entitled to receive restitution on his behalf. *See* 18 U.S.C. § 3663A(a)(2).

Thus, the amount of restitution that defendant owes is $1,182,500.[6]

### D. An 18-Level Enhancement Applies Because the Total Intended Loss is Between $3.5 Million and $9.5 Million

"Loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense," whereas "'[i]ntended loss' means [ ] the pecuniary harm that the defendant sought to inflict," including "intended pecuniary harm that would have been impossible or unlikely to occur." *Id*. "The court need only make a reasonable estimate of the loss." *Id*. at cmt. n.3(C).

Here, the loss calculations are based on victim statements, e-mail records, loan documents, and records of bank accounts held by defendant personally, defendant's business Solutions 823, Kunkle, and defendant's housekeeper, and on the declaration of Danny Shushelovsky, an IRS Revenue Agent who analyzed the underlying bank and financial records that showed the victims' transfers to defendant and the outflows therefrom for defendant's benefit.[7] In sum,

---

[6] The omission of loss relating to S.W. has been corrected. (*See* Amended Declaration of Danny Shushelovsky, attached hereto.).

[7] Defendant created an account at T.D. Ameritrade using his housekeeper's identity. (Dkt. 71). She did not make use of the funds and did not otherwise exercise control over the funds or the account.
*(footnote cont'd on next page)*

5

defendant obtained approximately $3,912,500 from the victims of the Alibaba scheme and defendant obtained an additional $1,244,200 from P.O. for the lulling cannabis scheme. (Ex. 2). The total amount of loss is $5,156,700. The calculation appropriately includes losses associated with the counts of conviction and the relevant conduct described above.

Additionally, defendant is not entitled to credits or offsets for payments to victims made for the purpose of concealing and continuing the Alibaba scheme (*United States v. Blitz*, 151 F.3d 1002, 1012 (9th Cir. 1998); *United States v. Stoddard*, 150 F.3d 1140, 1146 (9th Cir. 1998)), or offsets for amounts victims recovered by taking title to collateral pledged by Kunkle (*United States v. Komar*, 529 F. App'x. 28, 29 (2d Cir. July 8, 2013); *United States v. McCormac*, 309 F.3d 623, 628-29 (9th Cir. 2002)).

Accordingly, the loss caused by defendant's fraudulent scheme is between $3.5 million and $9.5 million, and the PSR properly applied an 18-level increase. (PSR ¶ 46, 14).

**E.   A Two-Level Enhancement Applies for Substantial Financial Hardship to One or More Victims**

The PSR applied a two-level enhancement because defendant caused substantial financial hardship to P.O. (PSR ¶ 49, 15). The government agrees. Under Application Note 4(F) to U.S.S.G Section 2B1.1, the Court shall consider a non-exhaustive list of factors, including whether the offense resulted in the victim becoming insolvent, filing for bankruptcy, incurring substantial loss of retirement, educational, or other savings or investment fund, making substantial

---

Defendant used the account to receive and use funds P.O. loaned for the purported cannabis business.

changes to employment (such as postponing retirement), changing living arrangements, and/or suffering harm to their ability to obtain credit. Whether a hardship is substantial is relative to the financial condition of the victim. *See generally United States v. Stratos*, 775 F. Appx. 352, 353 (9th Cir. 2019).

Defendant's fraudulent representations devasted P.O. both financially and emotionally. P.O. described his suffering in his victim impact statement and in related exhibits. Below are just a few examples of the consequences P.O. suffered as a result of defendant's schemes:

- When P.O. retired in 2018, he became his wife's caretaker and was especially reliant on defendant's fraudulent representations in the hope of avoiding personal bankruptcy. (Ex. 8).
- P.O. maxed out his credit cards which significantly reduced his credit score and he had to negotiate a repayment schedule with the credit card company. He lost most of his savings due to lending money to defendant and was forced to rely on fixed income, borrow money against funds that were set aside for his wife's healthcare, give up on inventions he had been working on, and stop sending financial support to friends and family who relied on him. (*Id*).
- P.O. also faced significant tax liabilities amounting to "many thousands of dollars" by early IRA withdrawals. (*Id*).

**F.   A Two-Level Enhancement Applies for Sophisticated Means**

This enhancement, at PSR ¶ 52, applies where a defendant was, for example, involved in hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts (i.e., use of nominees or alter-egos). *See* U.S.S.G. § 2B1.1(b)(10(C), App. Note. 9(B). Relatedly, this enhancement applies for impersonating another via email in furtherance of or to conceal a fraudulent scheme. *United States v. Milligan*, No. 21-3075, 2023 WL 4874389, at *5 (D.C. Cir. Aug. 1, 2023). It is the totality of the scheme, not any step by itself, that

7

is determinative of whether the enhancement applies. *See United States v. Aguare*, 800 F.3d 1173, 1175 (9th Cir. 2015).

This enhancement is especially apt here because a significant allure to defendant's scheme was defendant's repeated claim that he had inside connections at Goldman Sachs. Showing an early ability to fabricate identities to lend credibility to his lies, defendant created an e-mail account in the name of a phony Goldman Sachs connection – "Martin Graham" – and wrote detailed e-mails "by Graham" that purported to show defendant's victims how lucky they were that defendant invited them into his unique investment opportunity. (Ex. 9).

**G. A Two-Level Adjustment Applies for Vulnerable Victim**

This adjustment (PSR ¶¶ 53-55) applies if defendant "knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). A "vulnerable victim" is defined as "a person (A) who is a victim of the offense of conviction" or any relevant conduct, and "(B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct." *Id.*, cmt. n.2. Age may render an elderly victim unusually vulnerable to financial crimes. *See, e.g., United States v. Cancellare*, 246 F. App'x 406, 407 (9th Cir. 2007. A victim may be considered "unusually vulnerable" when the victim has already proven susceptible to an investment fraud but is repeatedly solicited for more funds. *See United States v. Lloyd*, 807 F.3d 1128, 1172-73 (9th Cir. 2015).

Here, P.O.'s age and repeated susceptibility to defendant's schemes, and defendant's repeated solicitation of funds from P.O., are particularly relevant. P.O. told defendant about P.O.'s

8

"liquidity problems" yet defendant reloaded on P.O. anyway by, among other things, threatening that, if P.O. failed to lend defendant more money, "his [cannabis] dispensary venture would fail, and would destroy the money lent recently, as well as any chances of recovering the Alibaba loan." (Ex. 6 at 2). (PSR ¶¶ 53-55). Despite his knowledge of P.O.'s vulnerabilities, defendant solicited and obtained more than $1 million from P.O.

### H. A Two-Level Adjustment Applies for Obstruction of Justice

This adjustment applied where a defendant "gives false testimony under oath or affirmation concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* (citing *United States v. Arambula*, 238 F.3d 865, 868 (7th Cir. 2001)). "[A] falsehood told at a pretrial hearing is material if it is calculated to substantially affect the issue under determination at that hearing." *Id.* "Fabricating a story to increase the probability that the district court will act in a specific way is quite troubling and is precisely the type of conduct that the obstruction of justice enhancement was designed to deter." *United States v. DeLeon,* 603 F.3d 397, 405 (7th Cir. 2010) (citations omitted).

The Court is well aware of the record surrounding defendant's recent and fraudulent effort to continue his trial. Indeed, the Court recited much of defendant's misconduct in concluding that defendant should be detained pending sentencing. Those same facts apply here. Defendant essentially conscripted unwitting counsel to create the appearance of defendant's legitimate desire to mount a defense. It was, instead, just another one of defendant's numerous fraudulent adventures that defendant has, for years, managed to engage others

9

with and about which defendant expected to dodge its consequences. Defendant gambled and made a bad bet. The facts, as contained in the court transcripts, could not be more exemplary obstructive conduct. (Ex. 10).

**IV.   SECTION 3553(a) FACTORS**

    **A.    The Nature and Seriousness of the Offense (§ 3553(a)(1))**

Defendant's offense conduct was serious. He carefully crafted a ruse to steal money that bore clever inducements, made it difficult for victims to discover the fraud, and insulated defendant having to regularly deal with his victims by abusing the reputation of good character and business judgment of the victims' trusted friend and relative – Kunkle. Defendant enhanced the attractiveness of his scheme by making up friends in high places, complete with fake emails, to create the further appearance of exclusivity and success. When his victims demanded repayment, defendant lulled them with more elaborate lies and excuses and partial payments – even phony payments (*see* Count 9). He carried on his scheme for a lengthy period of time despite obtaining what were intended to be short-term loans from the victims. And defendant reloaded on an especially vulnerable victim, P.O., by linking the success of one (fraudulent) investment with that of another (fraudulent) investment that drained P.O. of his savings at an especially fragile part of his life that led to devastating consequences for P.O. and his ailing wife.

    **B.    History and Characteristics of Defendant (§ 3553(a)(1))**

There are no mitigating factors. Defendant's lack of criminal history is not mitigating because defendant's history and characteristics are that of a dyed-in-the-wool fraudster who has engaged in numerous schemes to defraud individuals. This is merely

10

the first time he was caught. For example, the investigation in this case arose from another criminal matter where defendant had fleeced yet another individual leaving them unable to repay restitution owed by said individual. (Ex. 11). Defendant also defrauded at least one additional individual, A.K., regarding a purported cannabis business – much like P.O. was defrauded. (Ex. 12 at ¶¶ 6-8). And, true to form, defendant did not report the fraud proceeds from the charged conduct and his many uncharged schemes on his individual income tax returns which is why the Internal Revenue Service – Criminal Investigation led the investigation of this case. Accordingly, defendant's lack of criminal history reflects only that defendant was able to evade detection by law enforcement for many years, not that defendant's charged misconduct was aberrant. It was the opposite.

Defendant also has a history of abusing the judicial system to further and conceal his frauds. Defendant engaged in numerous delay tactics in civil cases that victims brought to recover their money. For example, R.M. sued defendant to recover his money lost to the Alibaba scheme. (Ex. 13). Defendant evaded being deposed, going so far as checking into an urgent care clinic the night before a court-ordered deposition to render himself "unavailable." The lawsuit resulted in a default judgment due to defendant's refusal to comply with court orders. (Exs. 14 at 3; 13, 15). And after several victims had filed lawsuits and obtained judgments, defendant filed for bankruptcy that was dismissed because he failed to submit the required documents and information. (Exs. 16, 17; PSR ¶ 87).

Defendant engaged in similar behavior even during the pendency of this case. Defendant rented a tony apartment at $26,500 monthly

rent but stiffed his landlord out of rent, forcing the landlord to risk default on their mortgage and potential foreclosure due to defendant's failure to pay. (Ex. 18). As of July 20, 2023, defendant owed $170,357 to the landlord. (*Id*. at 4; PSR ¶ 89). Next, as part of his most recent fraudulent pitch for a trial continuance, defendant induced an acquaintance to consider loaning defendant legal fees under the false pretense that defendant needed money for an attorney to assist him with a "tax issue." Defendant did not disclose that, instead, he intended to fund his defense for this criminal case. (Ex. 10 at 38-41).

### C. The Need for the Sentence to Reflect the Seriousness of the Offense, Deterrence, Promote Respect of the Law, and Just Punishment (§ 3553(a)(2))

As P.O. stated, defendant had, among other characteristics, a "dark, predatory, and sadistic mode of operation" and proved to be "totally amoral, but very cunningly persuasive, inventive in manipulating others' perceptions and callous in his 'clever' and harmful conduct." (Ex. 6 at 5). P.O. captured what is at stake when he pointed out that years in prison may change defendant's ways, but more importantly, "such a sentence will be in the public record, hopefully visible to Frankie's future prospective victims, and help keep them out of his clutches." (*Id*.). R.M. wrote, ". . . I believe Mr. Rosenthal is a serial liar and expert con man, who constantly takes advantage of trusting, innocent people, without any regard for the harm he is causing. (Ex. 19 at 2). "Lying and manipulation comes so easily to Mr. Rosenthal, that I believe he will return to his fraudulent ways once he is out of prison. He deserves the longest sentence allowed under the guidelines to ensure that he does not harm more people when he is released." (*Id*. at 3). "The Court should

12

consider the lengths that Mr. Rosenthal went to defraud so many people in this case. His elaborate web of lies went on for many months, which only shows how dangerous Mr. Rosenthal is. He is very good at conning people out of their money, with a large number of victims in his wake." (*Id*.).

Additionally, the need for general deterrence is paramount in this case. Economic crimes like defendant's are deterrable so long as they are met with a commensurate term of imprisonment. In drafting § 3553, Congress specifically confirmed that "[t]o deter others from committing the offense ... is particularly important in the area of white collar crime." S. Rep. No. 98-255, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259. Congress was particularly concerned with the fact that "[m]ajor white collar criminals often are sentenced to ... little or no imprisonment," which the offenders disregard as "a cost of doing business." (*Id*.).

The profile of white-collar criminals also demonstrates the increased value of general deterrence. "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation omitted).

Accordingly, a sentence of 121 months imprisonment appropriately reflects the serious of the offense, promotes respect for the law, and serves as just punishment to deter defendant and protect others from future fraudulent schemes devised by defendant.

**V.   FINE**

The government defers to the Court regarding whether to impose a fine.

13

**VI. CONCLUSION**

Defendant has caused significant harm to many, and the government respectfully requests that the Court fashion a sentence that accounts for his misdeeds and deters him and others like him from engaging in similar conduct.