1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                 WESTERN DIVISION

4                      ---

5     HONORABLE FERNANDO L. AENLLE-ROCHA, JUDGE PRESIDING

6                      ---

7

8   UNITED STATES OF AMERICA,    )
                                 )
9                Plaintiff,      )
                                 )
10                               )
        vs.                      ) NO:  21-CR-00031-FLA-1
11                               )
                                 )
12  FRANK HAROLD ROSENTHAL,      )
                                 )
13               Defendant.      )
    _____)

14

15

16         **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

17   **(STATUS CONFERENCE RE POTENTIAL SUBSTITUTION OF COUNSEL)**

18              **Los Angeles, California**

19             **Tuesday, June 20, 2023**

20

21

22

23                KATHERINE M. STRIDE, RPR, CSR
                  Official Court Reporter
                  United States District Court
24                350 W. 1st Street, Rm. 4455
                  Los Angeles, California  90012
25                (213)894-2979

1

2    **APPEARANCES:**

3    In behalf of the Government:

4                    SARAH E. HENDERSON, ESQ.
                     MARK AVEIS, ESQ.
5                    STEVEN M. ARKOW, ESQ.
                     ASSISTANT UNITED STATES ATTORNEYS
6                    Criminal Division, United States Courthouse
                     312 North Spring Street, Suite 1200
7                    Los Angeles, California  90012
                     (213)894-2400
8

9
     ALSO PRESENT:  FBI SPECIAL AGENT, LIZANDRO LOPEZ
10

11

12   In behalf of the Defendant:

13                   LISA SHINAR LABARRE, ESQ.
                     JAKE CRAMMER, ESQ.
14                   DEPUTY FEDERAL Public Defender
                     Federal Public Defender's Office
15                   Central District of California
                     321 E. Second Street
16                   Los Angeles, California  90012
                     (213)894-2854
17

18                   CASTANEDA LAW APC
                     BY:  SERGIO CASTANEDA, ESQ.
19                   1055 Wilshire Boulevard, Suite 1940
                     Los Angeles, CA  90017
20                   (213)800-4521

21

22                   QUINN EMANUEL URQUHART & SULLIVAN
                     BY:  CHRISTOPHER TAYBACK, ESQ.
23                   865 S. Figueroa Street, 10th Fl.
                     Los Angeles, CA  90017
24                   (213)443-3000

25

1          **LOS ANGELES, CALIFORNIA; TUESDAY, JANUARY 3, 2024;**

2                          **11:10 A.M.**

3

4          THE CLERK:  Calling LA CR 21-00031, *RUnited*

5  *States of America vs. Frank Harold Rosenthal.*

6          Counsel, please make your appearances beginning

7  with the Government.

8          MS. HENDERSON:  Good morning, Your Honor.  Sara

9  Henderson appearing for the United States, and I'm

10  joined here with my co-counsel, Steven Arkow, Mark

11  Aveis, and as well as I.R.S. Special Agent Lizandro

12  Lopez.

13          MS. LABARRE:  Good morning, Your Honor.  Lisa

14  LaBarre on behalf of Frank Rosenthal, who is present by

15  Zoom, along with Jake Crammer of our office, the Federal

16  Public Defender's Office.

17          THE COURT:  All right.  And Mr. Rosenthal is in

18  New York, I presume, appearing via Zoom, and I

19  authorized pursuant to his request.

20          I just want to confirm, Mr. Rosenthal, that you

21  are able see the courtroom and hear us.

22          THE Defendant:  Yes, Your Honor I can.

23          THE COURT:  All right.  Very good.  All right.

24          Well, good morning, everyone.  We're here as a

25  result of a fairly recent request by the Defendant to

1    substitute of counsel.  The request was filed on June

2    the 14th.  Trial is scheduled to begin three weeks later

3    on the 5th of July.

4            So, Counsel, why don't you go ahead and have a

5    seat.

6            Before I hear from the lawyers, I would like to

7    take a moment to summarize the procedural history of the

8    case.  So as a result of a fairly recent Motion to

9    Dismiss, that was filed by the Defendant, I'm now aware

10   of two tolling agreements that were entered into between

11   Mr. Rosenthal and the Government pre-Indictment.  One

12   tolling agreement was dated December 2nd of 2019, and it

13   tolled time between that date and June 30th of 2020.  In

14   reviewing that document, it appeared that Mr. Rosenthal

15   was represented by an attorney named Reuven Cohen of the

16   law firm of Cohen Williams LLP, and then there's a

17   second tolling agreement -- or Statute of Limitations

18   tolling agreement to toll time from July 1 of 2020 to

19   January 1 of '21, and in connection with that agreement,

20   Mr. Rosenthal was represented by Robert, or Bob Bennett,

21   formerly of Hogan Lovells, and the history of the case

22   post-Indictment is as follows:

23           On February 9 of 2021, an Indictment was

24   returned.

25           Two days later, February 11th, Mr. Rosenthal

1    made his initial appearance.

2           On March 4th of '21, the post-Indictment

3    arraignment on that Indictment was held, and at the

4    time, Mr. Rosenthal was represented by a third private

5    attorney, Kari Curtis Axel and Marc Weinstein of

6    Waymaker LLP.  The Court set trial to begin on

7    April 27th of '21.

8           On April the 9th of '21, a First Superseding

9    Indictment was returned.

10          Three days later on April 12th, the Defendant

11   filed an ex parte application, and the Court ordered

12   appointing the Federal Public Defender at the

13   Defendant's request.

14          And the very next day, April the 13th of '21,

15   the specific Federal Defender filed a notice of

16   appearance.

17          Two days later, April 15th of '21, the first

18   stipulation to continue the trial from April 27th of '21

19   to August 10th of '21 was filed.  The stipulation stated

20   that the Defendant moved to continue the trial to

21   August 10th.  This was the Defendant's first request for

22   a continuance.  The reasons for the request included the

23   Government's production of 30,000 pages of discovery,

24   some remaining discovery that was outstanding, the

25   recent substitution of the Federal Public Defender for

1    private counsel, and then some of the then prevailing

2    standard language in stipulations to continue federal

3    trials including the Federal Defender's need for delays

4    associated with the pandemic, and the Government did not

5    object to this request.

6         On April 15th of '21, I granted the order

7    continuing the trial to August 10, and that was a

8    three-month continuance.

9         On May the 11th of '21, Mr. Rosenthal appeared

10   for his post Indictment arraignment on the First

11   Superseding Indictment.

12        On July the 26th, a couple weeks before the

13   trial date, a second stipulation to continue the trial

14   from August 10th of '21 to March the 8th of '22.  That

15   is a seven-month period was filed.  That stipulation

16   states that the Defendant moved to continue the trial to

17   March 8th of 2022.  This is the Defendant's second

18   request for a continuance.  The reasons set forth in

19   this request are identical to the first request.

20        The next day, July 27th, I approved the

21   stipulation and entered an order continuing the trial to

22   March the 8th of 2022.

23        On February 22nd, a little over two weeks

24   before the next trial date, a third stipulation to

25   continue the trial is filed.  The request now is to

1    continue the trial from March the 8th of 2022, to

2    November the 8th of 2022.  This is an eight-month

3    continuance.  This stipulation said the parties jointly

4    moved to continue the trial to November 8th.  This is

5    now the third request for a continuance.  The reasons

6    set forth in this request included the Government's

7    recent production of another 20,000 pages of discovery,

8    the time, of course, that defense counsel needs to

9    review it, the fact that the Government at the time was

10   contemplating superseding the Indictment with additional

11   charges, the fact that the parties were discussing a

12   potential resolution of the case, and the Government's

13   need for time to make a presentation to the Defense to

14   aid possible pretrial settlement, and then the -- the

15   other more standard language including the Public

16   Defender's upcoming trials, and this request also

17   included the fact that the Defendant was living in

18   New York and, thus, meeting with him was slightly more

19   challenging.

20          The next day, February 23rd, I granted the

21   order continuing the trial to November 8th of 2022.

22          On August 9, the Public Defender's Office filed

23   a Notice of Reassignment.  The case was reassigned from

24   the prior Public Defender to another Public Defender.

25   Notices of Reassignment involving members of the same

1    law firm are not subject to judicial review and approval

2    by the Court.  This is set forth in Court

3    Form G-123.  As the parties know, counsel know, the

4    Court appoints -- in the case of court-appointed

5    counsel, the Court appoints especially the Federal

6    Public Defender in general to represent a Defendant not

7    a particular deputy within that office.

8            About two weeks before the next trial date,

9    August 23rd of 2022, a fourth stipulation to continue

10   the trial from November 8th of '22 to May 16, '23.  This

11   is a sixth-month continuance request.  That stipulation

12   was filed.  Like the prior one, that stipulation states

13   that the parties jointly move to continue the trial date

14   to May the 16th of 2023.  This was the fourth request

15   for a continuance.  The reasons set forth in this

16   request included the Government's production to date of

17   a total of 50,000 pages of discovery, the Government's

18   production of another 40,000 pages, the time that, of,

19   course, counsel needed to review it, the fact that the

20   Government had made it's presentation to defense counsel

21   for purposes of a possible settlement, the fact that the

22   Government was still contemplating superseding the

23   Indictment to add additional charges, and this recent

24   internal change within the Federal Defender's Office of

25   attorneys, and the same other reasons, the trial

1     schedule of counsel, of defense counsel in particular,

2     the need to prepare for trial, and the difficulty of

3     meeting with Mr. Rosenthal in New York.

4          On August the 31st, I granted the stipulation

5     to continue trial, not by six months, but by three

6     months and a continued the trial to February the 14th of

7     2023 instead of May 16th of 2023, as requested by the

8     parties.

9          On November 20th -- excuse me - -on

10    November 30th of 2022, the Defendant, alone, files an

11    ex parte application to continue trial now for a fifth

12    time, from February the 14th of 2023 to either

13    March 21st of '23 or August 22nd of '23.  The Federal

14    Public Defenders stated that he could not represent

15    Mr. Rosenthal effectively by the currently schedule

16    trial date of February 14th of 2023 and asked for a

17    continuance to August 22 of '23 to facilitate the

18    substitution of counsel to prospective attorney

19    Catherine Duval of Zuckerman Spaeder LLC or, in the

20    alternative, to the earlier date of March 21 of 2023 so

21    that the Public Defender could be ready for trial.

22          Attorney Duval, I believe, submitted a

23    Declaration, stated that she needed at least until

24    July of '23 to represent Mr. Rosenthal due to other

25    previously scheduled trials that she had and prefer a

1    continuance to August.  And as I mentioned, the Public

2    Defender asked for a continuance only to March of '21,

3    just one month, so that he could continue effectively

4    represent Mr. Rosenthal given recent discovery produced

5    by the Government, which consisted of another 132,000

6    pages, a significant additional production and, of

7    course, the Federal Defenders' trial schedule.

8            On December 2nd of '22, I set this for hearing

9    on December 16.

10           Three days before the hearing on December 13 of

11   '22, the Federal Defender filed an update to the

12   ex parte application informing me that Ms. Duval and the

13   Defendant had been unable to execute a retention

14   agreement due to unmet contingencies, that Mr. Rosenthal

15   was continuing to search for private counsel and may

16   request a continuance if and when he was going to retain

17   private counsel but that, meanwhile, the Federal

18   Defender would like to -- that -- but that, meanwhile --

19   excuse me -- Mr. Rosenthal wanted to proceed with the

20   Federal Public Defender in the event he did not retain

21   private counsel.  As a result, the Defense informed me

22   three days before the hearing that it was no longer

23   seeking a continuance to August 22 of '23 and was only

24   seeking a one-month continuance to March 21 of '23.  The

25   Government did not oppose pose the one-month

1    continuance.

2         On December the 16th of '22, I held a hearing.

3    There was an in-camera phase to the hearing.  There were

4    under sealed communications between the Court,

5    Mr. Rosenthal, and the Federal Public Defender regarding

6    both the Defendant's relationship with the Federal

7    Defender and the Federal Public Defender's need for

8    additional time to prepare for trial.  I sua sponte

9    sealed the court reporter's notes of the in-camera

10   portion of the proceedings.

11        As I sit here today and having gone back and

12   reviewed those notes in retrospect, the only portion of

13   the notes that I should have sealed are those pertaining

14   to Mr. Rosenthal's relationship with the Federal Public

15   Defender.  The balance of the court reporter's notes

16   concern the Public Defender's request for a trial

17   continuance of one month and a colloquy between the

18   Court and Mr. Rosenthal regarding both his desire to

19   retain private counsel at some point and the trial date.

20   That portion of the notes should not have been sealed as

21   they did not implicate any attorney-client privileged

22   communication.

23        So I am now, for purposes of today's hearing,

24   unsealing the portion of the court reporter's notes

25   concerning the hearing on the Federal Public Defender

1    application for a continuance and the colloquy between

2    the Court and the Federal Public Defender and

3    Mr. Rosenthal.

4        The balance of the court reporter's notes

5    regarding Mr. Rosenthal's attorney-client communications

6    and his relationship with his attorney remain under seal

7    until further order of the Court.

8        I made clear, to the Federal Public Defender

9    during this portion of the in-camera hearing, that I was

10   prepared to grant him more time than he was requesting

11   to ensure that he was prepared for trial.  I also made

12   clear to Mr. Rosenthal that he was free to retain

13   private counsel but that last minute requests that cause

14   delay to the trial date would be disfavored and that any

15   newly retained counsel would need to be ready to proceed

16   by the next trial date.

17       I told Mr. Rosenthal that he should take steps

18   to retain counsel sooner rather than later.  I made

19   clear to both Mr. Rosenthal and the Federal Public

20   Defender that this would be the last continuance.

21   Mr. Rosenthal acknowledged each of my admonitions and

22   stated he understood each of them.  After unsealing the

23   courtroom and with the Government counsel present, I

24   granted the Defendant's request for a continuance and

25   granted the Defense a five-month continuance instead of

1    the requested one-month continuance.  I made clear,

2    again, that this would be the last continuance and that

3    the next trial date would be firm.

4            With input from counsel on both sides, I

5    selected July 5th as the next final trial date.  My

6    minute order of the hearing also states that, quote, "If

7    Mr. Rosenthal seeks to retain new counsel, the Court

8    will require an in-person hearing before approval to

9    discuss with prospective counsel the current timetable

10   and his or her ability to be ready for trial."

11           On December 21, 2022, following that hearing,

12   the parties filed a stipulation to continue the trial to

13   July 5th of 2023.  The stipulation correctly reflected

14   that I continue the trial at the Defendant's request and

15   that this was the fifth request for a continuance in the

16   case.  The Government stated in the stipulation that it

17   did not object to the continuance.

18           The next day, December 22nd of 2022, I signed

19   the order and entered the order granting the stipulation

20   continuing the trial to July 5th of 2023, what was

21   approximately another five-month continuance.

22           Approximately, five months later on May 26th,

23   2023, the Federal Public Defender filed an ex parte

24   application to continue the trial from July 5th of 2023

25   to September 18, 2023.  The reason for the request was

1  that prospective counsel, Sergio Castaneda of Castaneda

2  Law, intended to substitute in but only if a further

3  trial continuance from July 5th to September 18th of

4  2023 was granted.

5          The Government opposed the request, citing to

6  the December 16, 2022, hearing and the five prior

7  continuances already granted.

8          On June 1st of 2023, I entered an order denying

9  the ex parte application, and I will quote from a

10  portion of that order:

11          It has been over two years since Defendant was

12  arraigned in this action.  The Court has granted five

13  continuances.  The parties were advised previously that

14  no further continuances would be granted.  The Defendant

15  also does not offer any explanation for why he did not

16  seek substitution of counsel at an earlier time if he

17  wished to retain new counsel or demonstrate good cause

18  for a further continuance.

19          Two weeks later on June 14th of 2023, attorneys

20  Edward Yim and Sergio Castaneda of Castaneda Law filed

21  requests for approval of substitution of counsel stating

22  that they had been retained to represent Mr. Rosenthal.

23  The two forms are dated June 14th, 2023, and they were

24  filed exactly three weeks before trial.  Nothing has

25  been filed by counsel of record, the Federal Public

1    Defender.  Federal Public Defender appears to have been

2    working diligently in advance of trial and has filed and

3    opposed multiple Motions in Limine and filed a Motion to

4    Dismiss the Indictment.

5           The Federal Public Defender has been counsel of

6    record now for 26 months since April of 2021.  Castaneda

7    Law also filed an ex parte application to continue the

8    trial from July 5th of 2023 to October 17th of 2023, one

9    month longer than requested in the May 26th, 2023,

10   ex parte application filed by counsel of record, the

11   Federal Public Defender.  In this ex parte application,

12   the Castaneda law firm held itself out as counsel of

13   record despite the fact that I had not approved any

14   substitution of counsel.  I struck the filing because it

15   had not been filed by counsel of record.

16          So I now want to give -- with that procedural

17   history and summary and place, I would like to hear from

18   counsel of record, the Federal Public Defender, and I

19   would like know whether you expect to be ready for trial

20   as agreed back in December.

21          MS. LABARRE:  Yes, Your Honor.  Yes, we will be

22   ready for trial July 5th.

23          THE COURT:  All right.  And is there -- is

24   counsel, who's asking to substitute in, is that counsel

25   here today?

1          MS. LABARRE:  They are, Your Honor.

2          THE COURT:  All right.  If one of those lawyers

3     could step forward, please, and identifY himself.

4          MR. CASTANEDA:  Good morning, Your Honor.

5     Sergio Castaneda of Castaneda Law.

6          THE COURT:  All right.  Good morning, sir.  So

7     are you in fact asking to substitute in at this point in

8     time?

9          MR. CASTANEDA:  Yes, I am, Your Honor.

10         THE COURT:  And can you be ready for trial by

11    July 5th?

12         MR. CASTANEDA:  We can try to be as --as ready

13    as we possibly can based on the state of the file right

14    now, the Defense file.

15         THE COURT:  And why -- why do you say that you

16    will try?

17         MR. CASTANEDA:  Well, I do believe that this

18    case -- his Defense does require an expert, a valuation

19    expert.  We've been actually speaking with the Public

20    Defenders about that possibility.  At one point.  They

21    said they didn't feel it was necessary.

22         THE COURT:  I don't need to hear about the

23    Federal Public Defender's strategy or communication.

24    This isn't about the Federal Public Defender.  I'm

25    asking you whether you can be ready for trial by July 5,

1    and if not, why not.

2          MR. CASTANEDA:  We will not be ready to

3    effectively represent him on July 5th because we feel

4    that an expert is required to give him an effective

5    defense.

6          THE COURT:  All right.  Anything else?

7          MR. CASTANEDA:  No, Your Honor.

8          THE COURT:  Okay.  Thank you.  Let me hear from

9    the Government.

10         MS. HENDERSON:  Your Honor, the Government does

11   not necessarily oppose this request given the

12   constitutional right at stake.  However, we would like

13   to address some factual background and legal background

14   to assist the Court in its inquiry of these two

15   requests.

16         THE COURT:  You filed an opposition to the

17   Castaneda Law firm's -- well, but you -- did you not

18   oppose the request?

19         MS. HENDERSON:  In the response that we filed,

20   we noted case law on the factors to consider in the

21   request as well as the Court's right to protect against

22   the weaponization of the Sixth Amendment right to

23   counsel and also to the source of funds.

24         THE COURT:  All right.  So what is your

25   position today?

1          MS. HENDERSON:  Provided that the request --

2     well, the request to continue implicates his Sixth

3     Amendment right to counsel, and we would ask the Court

4     to make a record.  You have made a fulsome record of the

5     procedural history, but we would just request additional

6     record built up around three issues and are happy to

7     address those if the Court wishes to do so.

8          THE COURT:  Go ahead.

9          MS. HENDERSON:  So the first issue is that the

10    right to counsel of one's choice is not unlimited.

11    There are four factors that restrict the right as

12    pronounced in *Wheat vs. United States* and restated by

13    the Ninth Circuit in *U.S. vs. Rivera Corona*, and those

14    include, in relevant part, that the Defendant is not

15    entitled to counsel which he cannot afford, and so we

16    would ask presumably an in-camera inquiry as to the --

17    not only the source of funds but the adequacy of funds

18    that the Defendant has now recently obtained presumably

19    from family members, which he could have asked for funds

20    earlier.

21          And another -- the second issue is that the

22    Court make a record of the *Flint* -- *U.S. vs. Flint*

23    factors.  When a continuance touches or implicates the

24    Defendant's Sixth Amendment right to counsel, those

25    include the Defendant's due diligence to avoid the need

1    for the request and the usefulness of the request, the

2    inconvenience to the Court, witnesses, parties, and

3    counsel, also the prior continuances, if any, as well as

4    the potential for prejudice if the request is denied.

5            And, finally, we'd also just like to make a

6    record of the issue that the Defendant should not be

7    permitted to weaponize his Sixth Amendment right to

8    counsel, and the case law as we cited in our response

9    makes it clear that courts are able to protect from

10   abuses of the right when it appears to be for the sole

11   purpose of delay or to frustrate the fair and timely

12   administration of justice.

13           I have more to say, but I can leave it there.

14           THE COURT:  All right.  So, I take it, the

15   Government would like to hear on these points before

16   taking a further position; is that what you're leading

17   me on to believe because what you filed is different

18   than what I'm hearing today?

19           MS. HENDERSON:  Your Honor --

20           THE COURT:  I was under the impression, having

21   read the papers that you filed, that the Government

22   would oppose another -- I guess, a sixth continuance of

23   the trial in this case, that you had aging victims,

24   victims have been scheduled to come here for trial, but

25   I'm probably not doing it justice.

1          MS. HENDERSON:  Yes, Your Honor, that's

2     correct.  And in the filing, the main point that we

3     wanted to drive home is that the record, especially

4     given the Court striking the filings by counsel as not

5     counsel of record, that we have this hearing in order to

6     make a fulsome record of the reasons for these requests.

7     And, yes, to the extent we are allowed to be in the

8     courtroom for some of these inquiries, we would like to

9     establish the record and we would like to proceed on

10    July 5th, but we also want to protect the record and not

11    open a situation where we're here again in two years.

12    So --

13         THE COURT:  All right.  All right.  Well, I

14    don't know who's in the best position to address this.

15    I imagine that new counsel would be in the best -- new

16    potential counsel would be in the best position to

17    address the adequacy of resources.

18         So if you could step up again, sir.

19         As you may understand and may appreciate, from

20    the summary that I provided at the beginning of the

21    hearing, the case has been around for a while.  Multiple

22    continuances have been granted.  Regardless of precisely

23    how many lawyers Mr. Rosenthal has had, he's had a few,

24    a handful, at least, during the life of this case, and I

25    imagine there were others, but I do not know for

1    certain.

2            And he and I discussed at the last hearing the

3    fact that I would not allow what the Government is

4    calling a weaponization of the Sixth Amendment right to

5    counsel to just delay this case from going to trial.

6    There's a pattern of requests for continuance on the eve

7    or close to the eve of trial.  And what assurances would

8    I have that, if I granted your request for a continuance

9    to October, that there wouldn't be another lawyer here a

10   week or two before trial telling me that he now wants to

11   substitute in, that your relationship with Mr. Rosenthal

12   is frayed, that resources are no longer -- were limited

13   and exhausted, and yet another request is being made to

14   continue this trial?

15           MR. CASTANEDA:  Yes, Your Honor.  So we have

16   been retained.  We are -- will be here for

17   Mr. Rosenthal.  I can't promise you that he won't sub us

18   out at some point, but I -- I don't think that -- I

19   think that the other continuances, not all of them were

20   his fault.  Maybe, the fifth one he actually --

21           THE COURT:  No.  We're not going to get into

22   that.  Okay.  No.  He signed on.  He's a party to all

23   those continues.  I made it very clear -- the

24   stipulations state what they state and they were signed

25   by counsel and most were made at the Defendant's

1    request.  So we're not going to -- what is the extent --

2    are you paid up through trial?

3              MR. CASTANEDA:  Yes.

4              THE COURT:  You're fully paid?

5              MR. CASTANEDA:  Yes, Your Honor.

6              THE COURT:  Okay.  So there's no amount that is

7    outstanding that is to be paid to get you all the way

8    through trial?

9              MR. CASTANEDA:  That's correct, Your Honor.

10             THE COURT:  Okay.  And is it -- obviously,

11   there's no guarantee as to the viability of any expert

12   witness.  I have no idea if you will be identifying an

13   expert and how the Government will react to it, and if

14   there is an objection, how I will rule on it.  So that

15   fact alone doesn't necessarily justify continuing the

16   trial.

17             I read in your -- the ex parte application that

18   I struck -- that there was another law firm,

19   potentially, willing to step into this case?

20             MR. CASTANEDA:  That's correct, Your Honor, and

21   they are here as well.

22             THE COURT:  Would that law firm -- if a

23   continuance were to be granted, would that law firm be

24   making an appearance as co-counsel with you?

25             MR. CASTANEDA:  That is my understanding.

1          THE COURT:  All right.  Has that offer been

2    fully paid through trial?

3          MR. CASTANEDA:  That, I would have to --

4          THE COURT:  All right.  Who's here from the

5    other law firm?

6          MR. TAYBACK:  Good morning, Your Honor.  I'm

7    Christopher Tayback on behalf -- well, intended to be on

8    behalf of this Defendant.  I'm --

9          THE COURT:  And you're with Quinn Emanuel; is

10   that right, Mr. Tayback?

11         MR. TAYBACK:  Yes, Your Honor.  There are a

12   number of us that are identified as potential counsel

13   here for Mr. Rosenthal, and we have -- we expect that we

14   are being paid today.  We're expecting a wire today.

15   The bank's were closed yesterday.

16         THE COURT:  And when you say expecting a

17   payment, is this full payment through trial?

18         MR. TAYBACK:  Yes.

19         THE COURT:  So if that amount arrives today,

20   nothing more would be owed to your law firm to get your

21   firm through trial as co-counsel with Mr. Castaneda?

22         MR. TAYBACK:  Correct.

23         THE COURT:  And can you be ready by October the

24   17th?

25         MR. TAYBACK:  Yes.

1          THE COURT:  Is there anything else you want me

2     to know with respect to you or your firm?

3          MR. TAYBACK:  The only piece of information

4     that I think hasn't been disclosed that I think you

5     should know is my understanding of the reason for the

6     delay and being able to engage private counsel is he

7     only recently came into -- had the ability to a family

8     member to have the resources to retain private counsel.

9          THE COURT:  And what do you know about that?

10         MR. TAYBACK:  I know it came from an uncle who

11    sold real estate.  Had a real estate transaction close,

12    and that generated the cash that is being given to

13    Mr. Rosenthal for the purpose of his Defense, and that

14    only closed, I believe, ten days ago, or something like

15    that.

16         THE COURT:  And did Mr. Rosenthal have any

17    interest in that real estate?

18         MR. TAYBACK:  Not to my knowledge.

19         THE COURT:  Was it owned by the uncle outright?

20         MR. TAYBACK:  That goes beyond my -- my

21    knowledge.

22         THE COURT:  And who would know about that?

23         MR. TAYBACK:  Probably, Mr. Rosenthal or the

24    uncle.  If there's a hearing, obviously we would present

25    whatever evidence we had.

1              THE COURT:  Okay.  And that piece of real

2    estate has generated enough revenue to pay for both law

3    firms to help Mr. Rosenthal through trial?

4              MR. TAYBACK:  Yes, Your Honor.  My

5    understanding is it's property in Florida.  I guess

6    properties are going up in Florida.

7              THE COURT:  I'm sure.  How long did he own it

8    for?

9              MR. TAYBACK:  That, I don't know, Your Honor.

10             THE COURT:  All right.  And are there

11   sufficient resources for trial costs --

12             MR. TAYBACK:  Yes.

13             THE COURT:  -- such as experts?

14             MR. TAYBACK:  Yes.

15             THE COURT:  So neither you nor Mr. Castaneda --

16   and by you, I mean your law firm, Quinn -- would be

17   asking for any more money of Mr. Rosenthal to get you

18   all the way through trial?

19             MR. TAYBACK:  That's correct.

20             THE COURT:  That's going to cover fees and

21   costs; is that right?

22             MR. TAYBACK yes.

23             THE COURT:  And Mr. Castaneda is saying yes.

24             All right.  Anything else, either Mr. Castaneda

25   or Mr. Tayback, that you think I should know?

1              MR. TAYBACK:  No, Your Honor.

2              MR. CASTANEDA:  No, Your Honor.

3              THE COURT:  Why wasn't this property sold

4     sooner?  This case has been pending two years?

5              MR. TAYBACK:  I don't know the answer to that

6     question.

7              THE COURT:  Who would know the answer to that

8     question?

9              MR. TAYBACK:  Mr. Rosenthal or his uncle.

10             THE COURT:  All right.  Is there anything else?

11             Does the Government have any response to any of

12     this?

13             MS. HENDERSON:  Yes, Your Honor.

14             THE COURT:  All right.

15             MR. TAYBACK:  Thank you, Your Honor.

16             THE COURT:  Thank you.

17             MS. HENDERSON:  Give us a second.

18

19                      (Pause in proceedings)

20

21             MS. HENDERSON:  Your Honor, the Government

22     would like to raise additional points regarding the

23     source and sufficiency of the now available funds.

24             THE COURT:  Let's do this:  I'm going to take a

25     recess.  I want you to submit all of your questions to

1  prospective counsel, and there's some questions that I

2  have posed that I would like answers to.  We'll take a

3  recess to give the parties an opportunity to speak with

4  Mr. Rosenthal, not here on the record, and then we'll

5  resume, and I would like answers to my questions and to

6  all of your questions.  Okay.

7          MS. HENDERSON:  Yes, Your Honor.

8          THE COURT:  All right.  We'll take a brief

9  break.

10          THE CLERK:  All rise.  We're in recess.

11

12                  (Recess taken)

13

14          THE COURT:  All right.  We're back on the

15  record.

16          Mr. Tayback, what can you tell me?

17          MR. TAYBACK:  Your Honor, I got some additional

18  information.  I also got questions from the Government,

19  which I also obtained answers to some of.  The uncle,

20  his name is James Allen.  He sold two residential

21  properties in Florida.  It took five months to sell.

22  They -- Mr. Rosenthal contacted his uncle around the

23  holidays is when he thought that might be A possible

24  source of funding.  The uncle agreed.  He listed the

25  properties -- or sold the properties.  I believe they

1    were publically listed, but I don't have the details

2    about that.

3         The Government had asked questions about title

4    to the properties, whether it was Mr. Allen's name only.

5    I don't know the answer to that yet.  Mr. Rosenthal has

6    no interest whatsoever in the properties and never has.

7         I am -- Mr. Allen is on a plane.  I'm going to

8    be receiving his number.  I may have already received

9    his telephone number.  I'm going to call him when he

10   lands at about 2:00 P.M., Pacific.  I'll obtain some

11   additional information, which I've indicated I would

12   provide to the Government because it's responsive to

13   some of the questions they asked for the purpose of

14   they're doing their own investigation into the source of

15   the funds, and -- and I believe the -- I believe that

16   answers the questions that Your Honor asked and that the

17   Government posed that I was able to answer.

18        THE COURT:  All right.  And why did it -- and

19   given the -- the length of time the case has been

20   preparing, why did it take until the last few months for

21   this to happen?

22        MR. TAYBACK:  I think it was not an obvious

23   source of funds for him.  It's an uncle on his mother's

24   side, and I don't think he realized that, perhaps, he

25   had assets that he would be willing to provide to sell

1    to provide the money to Mr. Rosenthal until around the

2    holidays when he was trying to find resources to obtain

3    private counsel.

4         THE COURT:  Uh-huh.  All right.  Would the

5    Government like to be heard?

6         MS. HENDERSON:  Yes, Your Honor.  As

7    Mr. Tayback represented, the Government wants some time

8    to do their own due diligence on the source and

9    legitimacy of these funds.  We also discussed with

10   Federal Defenders and prospective retained counsel the

11   timeline of submitting a joint status report to the

12   Court to provide the results of our inquiries including

13   documentary evidence, and we would propose the parties

14   discuss this Friday as the deadline to file that status

15   report and would request that we hold a status

16   conference, if necessary, on June 26th if the status

17   report is not adequate.  And following that hearing on

18   June 27th, if everything is adequate and the source

19   appears legitimate, we anticipate the parties would be

20   able to file a waiver of the Speedy Trial Act

21   stipulation, and we would -- despite all of these new

22   proposed dates, we would ask that the Court maintain the

23   June 30th pretrial conference and at the Federal

24   Defender's Office request that the trial be continued by

25   one week so we maintain a trial date and Federal

1    Defenders stay as retained counsel for now while this

2    investigation takes place.

3            THE COURT:  Uh-huh.  All right.  Is that the

4    counsel of record's position?

5            MS. LABARRE:  Yes, Your Honor.  We agree with

6    the Government and the proposed trial date of the week

7    of July 10th while this matter is being worked out.

8            THE COURT:  All right.  You're proposing the

9    status report to be filed by the 26th; is that right?

10   Is that what I heard?

11           MS. HENDERSON:  Sorry.  The status report by

12   June 23rd.

13           THE COURT:  By the end of this week?

14           MS. HENDERSON:  Correct.

15           THE COURT:  The soonest I can see you again is

16   the 27th, and I have a court ceremony in the morning.

17   So I'm not exactly what time but probably sometime in

18   the morning of the 27th.

19           MS. HENDERSON:  That day and time works for the

20   Government, Your Honor.

21           MS. LABARRE:  With the Federal Defenders Office

22   as well.

23           THE COURT:  Okay.  It would likely be -- it

24   could even potentially be the afternoon of the 27th,

25   just to let you know.

1          Is that okay for potential counsel as well?

2          MR. CASTANEDA:  It's okay with us, Your Honor.

3          MR. TAYBACK:  Yes.

4          THE COURT:  Okay.  Why don't we set it for 1:30

5     on the 27th for further hearing on the pending request

6     for substitution of counsel.  The status report should

7     confirm Quinn Emanuel's receipt of funding for trial and

8     fees and costs all the way through trial as well as

9     Mr. Castaneda's and then any other information I should

10    have in connection with the source of the funds and

11    anything else you want me to know.

12         MR. TAYBACK:  Your Honor, does the Defendant

13    need to be present?

14         THE COURT:  Yes, but he can -- he can appear by

15    Zoom again.

16         MR. TAYBACK:  That was my next question.

17         THE COURT:  I do not object to that given the

18    short timeline for all of this.

19         MR. TAYBACK:  Thank you, Your Honor.

20         THE COURT:  He needs to be here for the

21    pretrial conference and, of course, for trial.

22         MR. TAYBACK:  Yes, understood.

23         THE COURT:  Okay.

24         MS. HENDERSON:  And apologies, Your Honor, if I

25    may add just a few things.  When we spoke with

1    prospective retained counsel and current counsel of

2    record, we asked that documentary evidence as well as

3    representations by the uncle, James Allen, be submitted.

4    That would include the deed of the property, the sale

5    records, any liens on the property, potential

6    Declaration of the uncle and proof of wire funds as

7    Your Honor just mentioned.

8            THE COURT:  Okay.  In connection with the sale.

9    All right that sounds reasonable.

10           Any objection to any of that?

11           MS. LABARRE:  Not from the Federal Defenders

12   Office.

13           THE COURT:  Okay.

14           MR. TAYBACK:  No objection.

15           MR. CASTANEDA:  No objection.

16           THE COURT:  All right.  All right.  Can all of

17   that be obtained by Friday for purposes of filing the

18   status report?

19           MR. TAYBACK:  I believe so, Your Honor;

20   although, I will note I haven't spoken to the uncle.

21           THE COURT:  Okay.  I'll say the status report

22   is to be filed by end of the day on the 23rd, meaning

23   11:59 P.M.  We'll have a status conference on the matter

24   on the 27th at 1:30.  The trial will be continued from

25   the 5th to the 11th.  I may have to move the pretrial

1    conference.  I have limited resources, time, and an

2    unlimited supply the cases.  So if I do not grant the

3    request for substitution of counsel, I may have to

4    move -- just warning you I may have to move it if I

5    don't have time for the pretrial conference on the 30th.

6            MS. LABARRE:  Yes, Your Honor.

7            MS. HENDERSON:  Yes, Your Honor.

8            THE COURT:  All right.  Mr. Rosenthal, you

9    agreeable with moving your trial from the 5th to the

10   11th?  You've -- you've heard everything that's been

11   discussed here in the courtroom.  If there is anything

12   you don't understand, any question you have, please put

13   it to me now and let me know whether you're willing to

14   continue your trial by that amount of time and exclude

15   the additional time.

16           THE Defendant:  Yes, Your Honor.  I understand

17   completely.

18           THE COURT:  Okay.  All right.  If I end up

19   granting this and the parties are in agreement -- I've

20   already said once we had a firm trial date -- this will

21   be the absolute final firm trial date.  Quinn and

22   Mr. Castaneda will not be allowed to step off this case.

23   They would have been paid in full, and they will be

24   depending this case assuming it goes to trial on

25   whatever date we select; understood?

 1                MR. TAYBACK:  Yes, Your Honor.

 2                THE DEFENDANT:  Yes, Your Honor.

 3                THE COURT:  All right.  We'll see everybody

 4      back here on the 27th.  Thank you for being here today.

 5                Let me just inquire of the Government before we

 6      recess -- sorry -- the length of this trial, the total

 7      number of hours estimated in the witness list is about

 8      16, and with jury selection, that tells me, at least

 9      from the Government's perspective, not taking into

10      account any affirmative defense, that that, to me,

11      sounds like a four- or five-day trial, but the last time

12      we were here, I heard 10 to 15 days, and a panel of

13      prospective jurors would need to be time qualified for a

14      trial that would last that long.  So this is actually a

15      very important piece of information that I will need in

16      advance of trial.  So --

17                MS. HENDERSON:  Yes, Your Honor, in our trial

18      memo that was filed on Friday, the Government estimated

19      five days to complete trial.  Previously, the longer

20      expected trial was because we didn't know how many

21      custodians we would need to call, and we've narrowed our

22      witness list of fact witnesses.  So we anticipate five

23      days for the Government's presentation.

24                THE COURT:  Okay.  All right.  So I'm going to

25      assume no more than ten days for this trial for now for

1    jury -- potential juror purposes.  Please keep that in

2    mind when we get back together on the 27th if that needs

3    to be amended in any way.

4            Okay.  All right.  Thank you, everybody.  We'll

5    be in recess.

6            MS. LABARRE:  Thank you, Your Honor.

7            MS. HENDERSON:  Thank you, Your Honor.

8            THE CLERK:  All rise.  This Court is adjourned.

9

10                   (Proceedings concluded)

11

12                        --oOo--

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3              I hereby certify that, pursuant to Title 28,

4      Section 753, United States Code, the foregoing is a true

5      and correct transcript of the stenographically reported

6      proceedings held in the above-entitled matter and that

7      the transcript page format is in conformance with the

8      regulations of the Judicial Conference of the

9      United States.

10              Certified on December 31, 2023.

11

12

13

14

15

16

17      _____

18      KATHERINE M. STRIDE, CSR, RPR
        Official Court Reporter
19      License No. 11773

20

21

22

23

24

25